[No. 12107.  Department One.  November 17, 1914.]

JOHN ZAPPALA, *Respondent*, v. INDUSTRIAL INSURANCE
COMMISSION, *Appellant*.[1]

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—"FORTU-
ITOUS EVENT." A rupture, sustained while engaged in moving a
heavily loaded truck, which ran harder than usual, whereupon the
employee exerted all his strength and gave a jerk, is a "fortuitous
event" within the meaning of the workmen's compensation act, 3
Rem. & Bal. Code, § 6604-3, granting compensation for injury re-
sulting from "some fortuitous event as distinguished from the con-
traction of disease;" the event being an accident and there being no
distinction between accidents and fortuitous events, used in this con-
nection; especially in view of the expressed intent of the act to pro-
vide compensation for workmen injured in hazardous undertakings
reaching "every injury sustained, regardless of the manner in which
it was received."

SAME—DECISION OF COMMISSION—REVIEW—BURDEN OF PROOF.  3
Rem. & Bal. Code, § 6604-20 of the workmen's compensation act, pro-
viding that in court proceedings the decision of the department shall
be *prima facie* correct and the burden of proof shall be upon the
party attacking the same, has no application where the facts were
undisputed, leaving only a question of law in interpreting the stat-
utes.

SAME—RULES OF COMMISSION—CONCLUSIVENESS—REVIEW.  While
the court will *not* control the rulings of the industrial insurance
commission upon administrative features and matters peculiarly
within its control, its decisions interpreting the laws are reviewable
by the court, acting on its own interpretation of what the law means.

SAME—RULES OF COMMISSION—"ACCIDENTS." A rule of the in-
dustrial insurance commission that "hernia coming on while a
man was following his usual work is not an accident," does not pre-
vent recovery of compensation by an employee who was following his
usual work, and hernia resulted from a fortuitous event or accident
to which the result might be directly traceable.

APPEAL—REVIEW—HARMLESS ERROR.  Error in submitting to a
jury the interpretation of a statute, is harmless, where the verdict
correctly decided the question.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered February 21, 1914, upon the

[1]Reported in 144 Pac. 54.

verdict of a jury rendered in favor of the plaintiff, on appeal from a decision of the industrial insurance commission rejecting a claim for compensation under the workmen's compensation law.  Affirmed.

*The Attorney General* and *John M. Wilson, Assistant,* for appellant.

*F. W. Loomis,* for respondent.

Morris, J.—Respondent suffers from a hernia and, claiming to have received it under circumstances entitling him to relief under the workmen's compensation act, filed his claim with the industrial insurance commission.  The claim was rejected upon the ground that the hernia complained of was not the result of "some fortuitous event" within the language of the act.  Respondent then appealed to the lower court, where, over the objection of the commission, the case was submitted to a jury to determine whether or not the injury was such as fell within the act.  Verdict was returned for respondent, and the commission appeals.

The determinative question arises under § 3 of the act (Laws 1911, p. 346; 3 Rem. & Bal. Code, § 6604-3), providing that (p. 349) "the words injury or injured, as used in this act, refer only to an injury resulting from some fortuitous event as distinguished from the contraction of disease." The respondent was in the employ of a cooperage company and on the day of the alleged injury was pushing a heavily loaded truck.  The language of the respondent, in describing the circumstances under which the injury was received, was "that the car ran harder than usual, and he tried three or four times to start it but could not move it.  Then he put all his strength into it, gave a jerk, and hurt himself; felt a sudden pain; could not move for a little while; put his hands where he felt the hurt, and called for help; looked at himself and saw a swelling, a small lump where he was hurt; that he had never had any pain there before or any previous rupture." There was other corroborative evidence.

It is the contention of the commission that these circumstances do not disclose that the injury resulted from "a fortuitous event," and that no accident occurred which produced the injury; contending that, inasmuch as respondent did not slip or fall, nothing struck him, and nothing happened out of the ordinary which produced the rupture or hernia, it cannot be said that the hernia resulted from some fortuitous event. Fortuitous is defined as: "Occurring by chance as opposed to design; coming or taking place without any cause; accidental; casual;" and a fortuitous cause is said to be, "A contingent or accidental cause." Standard Dictionary.

In construing the language of the act, we must have in mind the evident purpose and intent of the act to provide compensation for workmen injured in hazardous undertakings reaching "every injury sustained by a workman engaged in any such industry; and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received." *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, and that the act should be liberally interpreted, to the end that the purpose of the legislature in suppressing the mischief and advancing the remedy be promoted even to the inclusion of cases within the reason although outside the letter of the statute, and that every hazardous industry within the purview of the act should bear the burden arising out of injuries to its employees regardless of the cause of the injury. *Peet v. Mills*, 76 Wash. 437, 136 Pac. 685.

The sustaining of an injury while using extreme muscular effort in pushing a heavily loaded truck is as much within the meaning of a fortuitous event as though the injury were the result of a fall or the breaking of the truck. To hold with the commission that if a machine breaks, any resulting injury to a workman is within the act, but if the man breaks, any resulting injury is not within the act, is too re-

fined to come within the policy of the act as announced by the legislature in its adoption and the language of the court in its interpretation. The machine and the man are within the same class as producing causes, and any injury resulting from the sudden giving way of the one, while used as a part of any industry within the act, is as much within the contemplation of the act as the other. When the appellant admits that the breaking of the truck because of the application of unusual force with resultant injury to the workman is covered by the act, then it must admit that the tearing of muscles or the rupture of fibers, or whatever it is that causes hernia, while exercising unusual effort, is likewise covered by the act; for there can be no sound distinction between external and internal causes arising from the same act and producing the same result.

In *Boardman v. Scott & Whitworth*, 3 W. C. C. 33, a case arising out of the British workmen's compensation act, it was held that an internal injury caused to a person in a normal state of health was a fortuitous and unforeseen event, in a case where a workman while lifting a heavy beam suddenly tore several fibers of the muscles of his back. In *Purse v. Hayward*, 1 Butterworth's W. C. C. 216, it was likewise held that a workman in his master's field, who, finding that the grain had been trodden down by bullocks, stooped to raise it and sprained his left leg, was within the remedies of the same act. The language of the British act is "personal injury by accident arising out of and in the course of employment." The English cases make no distinction between an accident and a fortuitous event as used in our act, for they say, in the case above cited, in answering the contention there made that an injury to be within the British act must be caused by some fortuitous and external event, that:

"The word 'accident' is a popular word of very wide meaning. Originally a grammarian's word, it has been used from Dr. Johnson's time until today to mean 'that which happens unforeseen, casualty, chance.' For four years this man had

successfully used these muscles to lift this weight; owing, perhaps, to carelessness, perhaps to a slip, perhaps to some other cause, except disease, he snaps the fibers of the muscles that had always successfully done the work, and if any ordinary person had been asked what had happened to him, he would have said that the man had had an accident, and I think the word would have been rightly used. To me it is the same as if he had been using a rope strong enough for the purpose, and by overstrain or sudden jerk the rope had snapped and the beam had fallen upon him. That would be an accident. In one case the work is done by a rope; in the other by a set of muscles. In each case the machinery is normally fit for the work, but the unexpected happens, and the rope or muscle snaps and there is an accident. To my thinking, there is in the word 'accident,' always an element of injury. . . . As to the word 'fortuitous,' I do not think I need trouble much about it. If the injury were caused by disease, it is clear that the applicant could not recover; but I find as a fact the man was not in any way diseased. Indeed, it was not seriously contended that he was. 'Fortuitous' means 'accidental,' 'casual,' 'happening by chance;' and I have already said that, in my opinion, this injury was caused by an accidental and fortuitous event."

So that, so far as concerns the class of injuries for which acts of this character provide compensation, no sound distinction can be made between those resulting from accident and those resulting from some fortuitous event. The above reasoning is that employed by the county judge. Upon appeal, *Boardman v. Scott & Whitworth*, 85 L. T. 502, the judgment was affirmed, the court saying:

"In determining the question whether the injury has been caused by an 'accident' or not, we must discriminate between that which must occur and that which need not necessarily occur in the course of the employment. If the thing must happen, it is not an accident, but, if it need not happen, then there is the fortuitous element and there is an accident."

*Fenton v. Thorley & Co.*, 5 W. C. C. 1, another English case, arose out of these circumstances: The workman, while turning a wheel attached to a press, "suddenly felt something

which he describes as a tear in his inside, and upon examination it was found that he was ruptured. There was no evidence of any slip, wrench, or sudden jerk." It was held below, following *Hensey v. White*, 2 W. C. C. 1, relied upon by appellant, that there could be no recovery because of "an entire lack of the fortuitous element." This contention was overruled, and it was said that the word "accident," as used in the British act, was used in its popular, ordinary sense as denoting an unlooked for mishap or an untoward event which is not expected or designed. Reference is made to *Stewart v. Wilsons & Clyde Coal Co.*, 5 Ct. Sess. (1903) 120, where a miner strained his back in replacing a derailed coal hutch, and the question arose, was it an accident within the meaning of the act. All the judges held that it was, and that when "a workman in the reasonable performance of his duties sustains a psychological injury as a result of the work he is engaged in, this is accidental injury in the sense of the statute. If such an occurrence as this can not be described in ordinary language as an accident, I do not know how otherwise to describe it." *United States Mut. Acc. Ass'n v. Barry*, 131 U. S. 100, and *North American Life & Acc. Ins. Co. v. Burroughs*, 69 Pa. St. 43, 8 Am. Rep. 212, are cited in support of the holding. Both of these are accident insurance cases. In the first, a man was fatally injured in jumping off a platform. In the second, an accidental strain resulted in death. The opinion in each case was that death resulted from an accidental injury within the meaning of the policy. These two cases, so cited by the English court, have been approvingly cited by this court in *Horsfall v. Pacific Mut. Ins. Co.*, 32 Wash. 132, 72 Pac. 1028, 98 Am. St. 846, 63 L. R. A. 425, where it was held that a violent dilation of the heart resulting in death, caused by lifting a heavy weight, was within the provision of an accident policy covering accidents caused solely by external, violent, and accidental means. In *Timmins v. Leeds Forge Co.*, 16 T. L. R. 521, it was held that a workman who ruptured himself, owing to

the difficulty of lifting a plank frozen to another plank, was within the British act, the court saying the evidence showed the injury to be "fortuitous and unexpected."

The American cases arising out of acts of this character sustain our conclusion that there is no distinction between the accident and a fortuitous event. In *Bryant v. Fissell*, 84 N. J. L. 72, 86 Atl. 458, it is said, in defining the word "accident" as used in the New Jersey act, "An accident is an unlooked for mishap or untoward event which is not expected or designed," citing *Fenton v. Thorley, supra. In Re William Murray*, Opinions Solicitor Dep. Commerce & Labor, p. 201, it is held that a rupture of the internal organs, due to the change between high and normal atmospheric pressure, was an accident. *McCougan v. Maryland Cas. Co.*, Massachusetts Industrial Accident Board, holds that, where a carpenter strained himself moving a heavy radiator, he was within the act granting compensation for personal injuries sustained in the course of employment. In *Gross v. Marshall Butters Lumber Co.*, the Michigan Industrial Accident Board holds that a workman suffering "severe straining of lumbar muscles and bruising of the third and fourth vertebrae" was entitled to compensation under a classification similar to that in the Massachusetts act. The above cases are collated in 1 Bradbury's Workmen's Compensation, 367. It seems to us it is not necessary to go further in support of our ruling that the injury to the respondent resulted from a fortuitous event within the meaning and intent of our act.

Section 20 of our act (Laws 1911, p. 368), provides that:

"In all court proceedings under or pursuant to this act the decision of the department shall be prima facie correct, and the burden of proof shall be upon the party attacking the same." 3 Rem. & Bal. Code, § 6604-20.

It is now contended that respondent has not sustained the burden of proof cast upon him by the law in seeking to over-rule the decision of the insurance commission. There is no dispute as to the facts resulting in the injury, so that we

are not called upon to review any decision reached by the commission on disputed facts. The question is rather one of law in determining the proper interpretation of the act as applied to the undisputed facts.

The appellant also suggests that the court ought not to disturb the rulings of the commission upon questions of policy involving the administration of the act, and that the commission, having adopted certain rules for their government in these cases, should be upheld in their observance. In so far as the commission has adopted any rules that pertain to the administrative features or those matters that are peculiarly within the control of the commission, the courts, we apprehend, will recognize its right to do so. But this does not mean that, in our interpretation of the true intent and purpose of the act on a pure question of law, we are bound by any ruling of the commission. If so, there would be no purpose in the appeal to the courts provided by the act. Whenever the industrial insurance commission interprets the law, that interpretation is reviewable in the courts, and while in any given case, as in this, the courts will give due respect to the rulings of the commission, they must finally act upon their own determination as to what the law means and the extent to which it is applicable. The rules adopted by the commission governing hernia cases are, (1) there must be an accident resulting in hernia; (2) the hernia must have appeared just following the accident; (3) there must have been present pain at the time; (4) the applicant must show that he did not have hernia before the accident; (5) hernia coming on while a man is following his usual work is not an accident. We see no difficulty in sustaining a recovery under these rules, the evidence, in our judgment, meeting every requirement here made. The evidence takes the case out of the 5th rule showing, as we have held, that the hernia in this case resulted from a fortuitous event or accident, and is not one appearing while the workman was following his usual work,

without accident or fortuitous event to which the result might be directly traceable.

The only error we find in the record is the sending of the case to the jury. The case, calling for an interpretation of the language of the act upon undisputed facts, was one of law for the court. But, inasmuch as the jury has reached the proper conclusion, we do not feel that we would be justified in holding this error so prejudicial as to require a reversal of the judgment and the ordering of a new trial.

The judgment is sustained.

CROW, C. J., GOSE, CHADWICK, and PARKER, JJ., concur.