ROBERT GALE, APPELLANT, *v.* THE MUTUAL AID AND ACCIDENT ASSOCIATION, RESPONDENT.

*Accident insurance — injury ascertainable by touch although not visible to the eye.*

To justify a recovery upon a policy of accident insurance, containing a provision that it should not extend to a disability caused by disease, or to any injury of which there should be no external or visible signs, the injury need not necessarily be visible to the eye; it is sufficient if it can be ascertained by applying the hand to the exterior of the body.

Hence, where the holder of a certificate of membership in a mutual accident association, which contained the above provision, received an accidental injury which he claimed had sprained his diaphragm and contiguous muscles, which injury was not visible to the eye, but physicians testified that they ascertained it by manipulating the muscles, which were located so near the exterior of the body as to be readily felt with the hand, and by finding them rigid and tense, and that they were satisfied the rigidity of the muscles and the accompanying pain were not feigned or caused by disease, although they were aided in locating the injury by information derived from the injured person himself, a nonsuit should not be granted, in an action brought to recover the amount, payable under the certificate, by reason of such accident.

APPEAL by the plaintiff, Robert Gale, from a judgment of the Monroe County Court, entered in the Monroe county clerk's office on the 20th day of July, 1892, dismissing the complaint, and from an order denying a motion for a new trial made upon the minutes, and entered in said clerk's office on the same day.

*Martin W. Cooke*, for the appellant.

*Henry M. Hill*, for the respondent.

LEWIS, J.:

The action was brought upon an accident policy, issued to the plaintiff by the defendant, to recover indemnity for disability arising from injuries claimed to have been sustained by the plaintiff while engaged in lifting.

The certificate of membership contained a provision that benefits, under the certificate, should not extend to disability caused by disease, or to any injury of which there should be no external or visible signs.

It was, therefore, incumbent upon the plaintiff to show, in order to maintain his action, that there was upon his body an external

and visible mark or sign of the injury he claimed to have sustained. The trial court held that he had failed to make such proof, and hence granted a nonsuit. The plaintiff contends that there was evidence on that point which should have been submitted to the jury.

The plaintiff was engaged, with an assistant, at the time he claimed to have sustained his injuries, in lifting a heavy iron fire-pot to a furnace on to an elevator. The assistant's hands slipped off from the fire-pot, and allowed the whole weight of the iron to rest upon the plaintiff, which, as he claimed, strained his diaphragm and recti muscles. He was thereby, as he alleged, so disabled that he was confined to his house, unable to work, for a long time. The recti muscles lie along each side of the median line of the abdomen, just under the skin, and in close proximity to the diaphragm. The plaintiff was, after receiving his injuries, examined by a number of physicians, who were called as witnesses, and who testified that they examined the plaintiff, and found him in great distress, having difficulty in taking a long breath ; that the filling of his lungs seemed to draw upon the recti muscles, and apparently caused the patient to suffer pain in the locality of these muscles. They testified that there was no objective evidence, visible to the eye, upon the plaintiff's person, showing that these muscles had been injured, but that they ascertained, by manipulating the muscles, that they were rigid and tense, and that such a condition of the muscles was evidence that they were painful; that pressure upon them caused the patient to suffer pain, which was evidence, to their minds, that they had received an injury. Their testimony tended to show that the muscles were so located, near the exterior of the body, that they could be readily and easily felt with the hand. They testified that, while a person could voluntarily make these muscles rigid, as the plaintiff's appeared to be when they examined him, that they applied well-known tests, which they described, to ascertain if the plaintiff was, in fact, feigning, and that they learned, by such tests, that he was not voluntarily making his muscles tense. They testified that they were fully satisfied that the plaintiff had sustained an injury to these muscles, and they believed that was the cause of his disability. There was an entire

absence of any fever, which was evidence, to their minds, there was no inflammation, and that the patient was not suffering from any disease like pleurisy or rheumatism, but, in their opinion, his condition was caused by a strain. The surgeons testified that they were aided, in locating the injuries, by information derived from the plaintiff.

Dr. Briggs testified : " It is my opinion that Mr. Gale, when I treated him, was suffering from a muscular strain of the diaphragm and recti muscles. * * * If nothing had been said by Mr. Gale about over-lifting, from the symptoms I obtained, I should have supposed his case was a strain. If it were not for the information I got from him, I would have been puzzled to know what it was. In other words, without the explanation he gave, I would have found it hard to tell what it was. * * * Every physician would be at sea, every day, were he to be debarred from receiving the statement of his patient, and so he would be in a case like this."

Dr. Briggs evidently meant to be understood by this evidence that he would have had difficulty in locating the precise muscle that had been injured if he had not been aided by the statements of the patient ; but having ascertained the location of the pain by the statement of the patient he testified that he was convinced that the muscle had been injured by manipulating it.

Dr. Dann, a physician of twenty-six years' practice, was called as a witness and testified : " I manipulated those muscles and examined them with my fingers. I discovered this injury from such examination. * * * Such an injury would be likely to produce just what we found present in this case. * * * In all my examinations I never discovered any other malady or injury from which this man was suffering, except what I have stated. * * * I should say he was suffering from a strain of the muscle."

" There was nothing further on the person of this man to indicate injury than that, when the hand was placed on the abdomen, any pressure caused the muscles to be tense." He testified that he could feel the rigidity of the muscles with his fingers, and that the rigid state of the muscles indicated, to his mind, that it had received an injury.

The condition of the policy as to external evidence of an injury was inserted to protect the insurer against fraudulent claims. It is

a reasonable and a proper provision, but it should have a reasonable and practical construction. The evidence of the injury must be external, objective, but it must not necessarily be visible to the eye. If it can be ascertained by applying the hand upon the exterior of the body, such a test affords equal protection to the assured against fraudulent claims based upon simulated injuries as evidence that can be seen with the eye. Information derived through the sense of feeling may be quite as satisfactory and convincing as that derived by sight.

The word "visible" is defined by Webster to mean "noticeable; apparent; open; conspicuous." In the Century Dictionary, as "apparent; open; conspicuous; as a man with no visible means of support discernible in sight; obvious; manifest; clear; distinct; plain; patent; unmistakeable." An object that is noticeable, apparent to the touch, may be said to be visible.

The surgeons testified that a fracture of a rib would not be visible to the eye, but could be easily ascertained by the use of the hand.

An examination of the evidence has satisfied our minds that there was sufficient evidence tending to show external and visible indications on the body of the assured of the injuries which he claimed to have sustained, so that a case was made which should have been submitted to the jury.

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., and MACOMBER, J., concurred.

Judgment and order of the County Court of Monroe county appealed from reversed and a new trial granted, with costs to abide the event.