HERMAN FEIS, APPELLEE, v. UNITED STATES INSURANCE COMPANY, APPELLANT.

FILED DECEMBER 29, 1924.  No. 22928.

1. Insurance: PROOF OF LOSS: NOTICE: WAIVER. Before an action is begun to recover upon a policy of accident insurance, refusal of payment made on the ground that the policy was not in force at the time the injury was sustained constitutes a waiver of notice and proof of loss.

2. ——: Policy: Construction. An accident insurance policy made the insurer liable only "where there are some external and visible marks of an injury." In such a policy these provisions should be liberally construed as regards the insured.

3. ——: ——: ——. It is not required that such marks shall be either immediately visible or enduring in their nature, and where the evidence shows that the insured received a violent blow upon the stomach sufficient to knock him down, to affect his breathing, and to cause a slight pallor in his face at the time of the accident, and there is also medical testimony that such a blow would probably cause a reddening of the skin which would soon· disappear, the requirements of the policy as to "external and visible marks" are sufficiently met.

4. ——: Questions Properly Submitted. Evidence examined, and *held* sufficient to justify the submission of the questions as to whether the death of the deceased was the result of an accident such as is covered by the provisions of the policy, and whether there were some "external and visible marks of an injury."

Appeal from the district court for Lancaster county: Frederick E. Shepherd, Judge. *Affirmed.*

*C. L. Clark* and *R. F. Ireland,* for appellant.

*J. C. McReynolds, contra.*

Heard before Morrissey, C. J., Letton, Rose, Good and Thompson, JJ.

Letton, J.

Plaintiff's son held an accident insurance policy in the defendant company. The policy provided that, in case of the death of the insured from accident, $1,000 should be paid to the beneficiary, who is the plaintiff in this case. The son died from what is claimed by the plaintiff to be the result of an accident. Defendant denied liability, pleading that the policy was void at the time the insured sustained the injury; that no notice was given of the injury within 20 days, as the policy requires; that the policy only insured " against loss resulting directly, independently, and exclusively of all other causes from bodily injuries effected during the life of this policy, solely through external, vio-

lent, and accidental means, and where there are some ex- ternal and visible marks of an injury;" that the injury and death were not so caused, but were " caused primarily and directly from gastric hemorrhage due to an ulcer or ulcers of the stomach," and that there were no external and visible marks of the injury alleged in plaintiff's petition. The reply denies the allegations in the answer, and pleads that the defendant, before the filing of the action, denied any liability on the policy and waived proofs of loss and notice of the accident and death.

Defendant absolutely denied any liability before suit was brought, alleging that the policy was not in force at the time of the injury. This is a waiver of the defense based upon the provision of the policy requiring notice of the accident and proof of death. Where it is denied that the policy is in force at the time the injury is received, a defense based upon a provision of the policy is inconsistent with it, and proofs of loss are dispensed with. *Omaha Fire Ins. Co. v. Hildebrand,* 54 Neb. 306; *Ætna Ins. Co. v. Indiana Nat. Life Ins. Co.,* 191 Ind. 554, 22 A. L. R. 402, and cases in note, p. 408.

A fair interpretation of the petition is that it charges that the insured received an accidental blow upon the stomach, and also an injury from two heavy lifts in the course of his employment. The evidence is to the effect that on September 26, the day of the first accident and injury alleged, the deceased, a young man about 20 years of age, who was working for a farmer named Macklin, with Macklin and his son, a young man of about the same age as the insured, were loading an implement, commonly known as a " hay-buck," upon a wagon, and that the wind caught it and blew it over. A projecting beam or sweep upon it struck the insured across the stomach and " knocked the breath out of him," a witness says, and he was a little pale. He was knocked into a sitting position. He said he was not hurt much. Afterwards he worked as usual. There was apparently no difference in his appetite, but he was restless at night and did not sleep well, while before he

was a sound sleeper. On that night he rubbed his hands across his stomach several times and did so more or less all the week. On September 28 the insured and young Mr. Macklin were about to remove a water-tank partly filled with water. They had to lift one side high enough to empty it before they could load it. It was heavy and hard to lift. After it had been lifted, young Mr. Macklin says he noticed the insured stooped over, that he was trembling, and sweat broke out on his forehead. He worked on September 29 and 30, and on the evening of October 1 he vomited blood. A physician was called, who gave him a hypodermic, but he vomited blood again twice before morning. His father arrived at the farm in the morning. Upon consultation with the doctor it was decided to take the young man to a hospital in Lincoln. This was done. He was able to walk into the hospital; but, while there, had recurrent hemorrhages, which he vomited. He had lost so much blood that an attempt was made a few days afterwards to save his life by transfusion of blood from his brother's arm, but he died during this operation.

Among the defenses pleaded are that insured died from hemorrhages caused by gastric ulcer, and not from the result of an accident; that, if it should be found that he died from an accident, defendant was not liable under the policy, because the injury did not occur " solely through external, violent, and accidental means," and there were " no external and visible marks of an injury."

There is no direct proof that the blow upon the stomach caused any external and visible mark upon the body. Apparently the insured was not examined by any one until the night of October 1, when the physician was called. There is no proof that there was then any visible mark of the blow upon his body. Two attending physicians at the hospital testified that, when examined at that time, there were no visible external marks upon the body, and that in their opinion the hemorrhages were the result of gastric ulcers. Another physician testified, in answer to a hypothetical question, that a blow such as was described would

be apt to show a reddening of the skin, that if there had been a reddened spot it might disappear in a day, and that it would be unusual for such evidence to be in existence six or seven days after the blow. Another doctor testified that a blow such as described might possibly, but not very probably, cause a rupture of a small blood vessel in the stomach. Much medical testimony was adduced upon the question, whether if a mark had been made upon the body at the time of such a blow it would have disappeared before the time that the examination was made, and upon the question as to the probable existence of gastric ulcer.

The court gave the following instruction, the latter clause of which is vigorously urged to be reversible error: "If the death of the insured was not the proximate result of his alleged accidental injuries, independent and exclusive of all other causes, the plaintiff cannot recover. Moreover, if you find from the evidence that the injury of the deceased, if any, did not cause any external visible mark upon him, you should find for the defendant; but you are further instructed in this connection that if he received a violent blow upon the abdomen sufficient to knock him down, and if you so find from the evidence, you are at liberty to find and believe that the injury did produce an external mark upon him, though the same did not long remain."

Considering the undisputed facts in evidence, we are inclined to think, taking the instruction as a whole, that it was not prejudicial. There is no denial that at the time the insured was struck he appeared to have "the breath knocked out of him," and was pale, and that afterwards, when he lifted the heavy tank filled with water, his face became pale, he trembled, perspiration broke out upon his brow, and he stood for several minutes attempting to recover. Three nights after he vomited blood and had recurring hemorrhages until he died. Up until that day he had apparently been a strong, healthy young man, working every day, with a good appetite and apparently sound digestion. He had never complained of any trouble with his stomach. While there was a conflict in the evidence

of the doctors as to whether the injury resulted " directly, independently, and exclusively of all other causes from bodily injuries," there was sufficient evidence to warrant the jury in so finding.

Were there any " external and visible marks? "   The words must not be strictly, but liberally, construed as regards the insured.   It is not required that such marks shall be either immediate or enduring in their nature.   What is essential is that there is some manifestation abnormal in its nature and affecting the physical man, the existence of which may be ascertained by observation or examination. *Pennington v. Pacific Mutual Life Ins. Co.*, 85 Ia. 468.   The question of what constitutes an external and visible mark has been before the courts in a number of cases.   A case very similar to this is *Horsfall v. Pacific Mutual Life Ins. Co.*, 32 Wash. 132, 63 L. R. A. 425.   The insured in that case had overtaxed his strength by a heavy lift.   Immediately thereafter he showed pallor, he trembled, and perspiration stood out upon his forehead.   Such indications were held by the court proper to be submitted to the jury to determine whether they were visible and external marks within the meaning of the words in the policy.   See also, *Modern Woodman Accident Ass'n v. Shryock*, 54 Neb. 250 ; *Barry v. United States Mutual Accident Ass'n*, 23 Fed. 712 ; *Peterson v. Locomotive Engineers Mutual Life & Accident Ins. Ass'n*, 123 Minn. 505, 49 L. R. A. n. s. 1022, and note; *Lewis v. Brotherhood Accident Co.*, 194 Mass. 1 ; *Root v. London Guarantee & Accident Co.*, 92 App. Div. (N. Y.) 578 ; 4 Joyce, Insurance (2d ed.) sec. 2617 ; Fuller, Accident and Employers' Liability Insurance, 121.   Under the authorities cited, there were some " external and visible marks of an injury."

Considering all the facts in the case, we are of the opinion that no prejudicial error occurred, and the judgment is, therefore,

AFFIRMED.

Note—See Accident Insurance, 1 C. J. secs. 37, 79, 80, 206, 337.